JONATHAN E. NUECHTERLEIN
General Counsel

EDWARD GLENNON
CARL H. SETTLEMYER, III
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mail Drop CC-10528
Washington, DC 20580
(202) 326-3126; -2019 (Tel.)
(202) 326-3259 (Fax)
eglennon@ftc.gov
csettlemyer@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GENESIS TODAY, INC., a corporation;<br><br>PURE HEALTH LLC, a limited liability company; and<br><br>LINDSEY DUNCAN, individually and as an officer of GENESIS TODAY, INC.,<br><br>Defendants. | Case No.  1:15-cv-62<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.       The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, in connection with Defendants'

1

advertising, marketing, and sale of various dietary supplements and food products, including green coffee bean extract ("GCBE"), a dietary supplement or food purported to cause substantial weight loss, including by as much as 17 pounds in 12 weeks and 16 percent of body fat in 12 weeks, without diet or exercise.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (b)(2), (b)(3), (c)(1), (c)(2), (c)(3), and (d) and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces Section 12 of the FTC Act, 15 U.S.C. § 52, which prohibits false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANTS

6.      **Defendant Genesis Today, Inc.** ("Genesis Today") is a Texas corporation with its principal office or place of business at 14101 W. Highway 290, Building 1900, Austin, TX 78737.  At times relevant to this Complaint, Genesis Today has advertised, marketed, and sold a variety of dietary supplements and food products, including, from approximately April 2012 through the present, GCBE, to consumers throughout the United States.  Genesis Today has sold GCBE products directly to consumers via the Internet and through third-party retail stores. Genesis Today transacts or has transacted business in this district and throughout the United States.

2

7.      **Defendant Pure Health LLC** ("Pure Health") is a Nevada limited liability company with its principal office or place of business at 14101 W. Highway 290, Building 1900, Austin, TX 78737.  Lindsey Duncan and Genesis Today created Pure Health to market alternatively branded versions of Genesis Today's dietary supplements, including through Internet websites.  At times relevant to this Complaint, Cheryl Wheeler Duncan, the ex-wife of Defendant Lindsey Duncan, was one of two members of Pure Health and owned 94% of the company.  On November 1, 2012, Genesis Today purchased 100% of the shares of Pure Health, thereby making Pure Health a wholly-owned subsidiary of Genesis Today.  From approximately February 2012 through the present, Pure Health, acting alone or in concert with others, has advertised, marketed, distributed, or sold food products and dietary supplements, including, since April 2012, those containing GCBE, to consumers throughout the United States.  Pure Health transacts or has transacted business in this district and throughout the United States.

8.      **Defendant Lindsey Duncan** ("Duncan") is the founder, Chairman, CEO, and a minority shareholder of Genesis Today.  At times relevant to this Complaint, including from February 2012 through the present, Duncan has exercised authority and control over Genesis Today and Pure Health's marketing and sales of a variety of dietary supplements and food products, including GCBE.  Duncan has advertised, marketed, distributed, or sold GCBE to consumers throughout the United States by, among other things, appearing on nationally televised shows such as "The Dr. Oz Show" and "The View" and numerous regional and local television programs.  Duncan also has marketed GCBE through the website, www.drlindsey.com.  At times relevant to this Complaint, including from February 2012 through the present, acting alone or in concert with others, Duncan has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Duncan transacts and, in connection with the matters alleged herein, has transacted business in this district and throughout the United States.

9.      Defendants Genesis Today and Pure Health have operated as a common enterprise while engaging in the deceptive acts and practices alleged below.  These defendants have conducted the business practices described below through interrelated companies that have

3

common control, officers, business functions, employees, and office locations.  Because these defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendant Duncan has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Genesis Today and Pure Health that constitute the common enterprise.

## COMMERCE

10.     At all times material to this Complaint, Defendants Genesis Today, Pure Health, and Duncan (collectively, "Defendants") have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

11.     Defendants have advertised, marketed, promoted, offered for sale, sold, and distributed dietary supplement and food products since at least 2010.  Defendants have advertised, marketed, and promoted their products through a variety of methods, including websites, point-of-sale displays in retail stores, and appearances on nationally and locally televised talk show and news programs.

12.     At times relevant to this Complaint, Defendants' marketing strategy has involved appearances by Duncan on national television programs such as "The Dr. Oz Show" and "The View," to promote Defendants' products and product ingredients.  This marketing campaign also has involved similar appearances by Duncan and other paid spokespersons on numerous local and regional television programs.  During his television appearances and on various websites, Duncan presents himself as an expert on health foods and nutrition.  For example, www.drlindsey.com states:  "With over 28 years of clinical experience, naturopathic doctor and celebrity nutritionist, Dr. Lindsey Duncan is one of the world's leading experts on superfoods, herbal medicine, natural remedies and natural health."   During their television appearances, Duncan and other spokespersons discuss the efficacy of the Defendants' products or product ingredients.  In numerous instances, they have displayed their branded bottles of Defendants' juices and supplements, often displaying several of the Defendants' products in single appearances.

4

13.     To help implement Defendants' marketing strategy, Genesis Today retained a public relations firm from approximately September 2010 through about August 2011.  Genesis Today's March 2011 contract with the firm required the firm to, among other things, "[s]ecure a product-oriented spot for Dr. Lindsey (or other GT spokesperson) and/or One of Genesis Today's Products in a National Broadcast or Cable W Segment at a minimum of one/month."  Duncan and other Genesis Today spokespersons appeared on a number of television programs in 2010-2011.  On at least one occasion, following Duncan's first appearance on "The Dr. Oz Show," the public relations firm "pitched" ideas for additional segments to a producer of the show.

14.     Following termination of Genesis Today's contract with its public relations firm, Genesis Today carried on the public relations campaign independently, continuing to book appearances for Duncan on televised talk shows.  Defendants' public relations campaign served as one if its "five pillars" of marketing, an effort summarized by the company in mid-2011 as "[u]sing our internal experts (Dr. Lindsey, Dr. Rob, Cheryl, and Eric) to promote Genesis Today as a brand and our product portfolios via TV, radio and other media outlets."  In an August 19, 2011 document outlining Defendants' public relations goals, a senior member of Genesis Today's public relations team stated that "Placements on broadcast TV continue to produce our most visible sales impact, and therefore, we continue to strive for broadcast TV placements as our number one priority."  The document also noted that "in the works for September" were appearances on "The Dr. Oz Show" and "The View."  In multiple instances following Duncan's appearances on television programs, Defendants sent gift cards of more than $100 in value, or complimentary shipments of their products, to the producers and staffs of various television shows, including "The Dr. Oz Show" and "The View."  Defendants also sent gift cards, worth several hundred dollars each, to four individuals associated with "The Dr. Oz Show" and "The View" as holiday presents in December 2011.  At least one person returned the gift.

15.     At times relevant to this complaint, Defendants attempted to track the impact of media exposure of Duncan, their spokespersons, and their products.  In so doing, they often

tracked the estimated monetary value of the publicity from those appearances, the retailers mentioned on the shows and in other media, and the impact the appearances had on traffic to their websites and sales of their products.

Duncan and "The Dr. Oz Show"

16.     Duncan appeared as a guest on "The Dr. Oz Show" on a number of occasions in 2011 and 2012.  Defendants viewed Duncan's appearances on "The Dr. Oz Show" as an opportunity to reach their "target audience," and Duncan advised connections at a major retailer in March 2011 that "[t]ens of Millions of female shoppers will see me on this show."  Duncan's appearances on "The Dr. Oz Show" included one that first aired on February 16, 2012 to discuss various "cancer-fighting" supplements, including black raspberry, and one that first aired on April 26, 2012 to discuss GCBE.  Defendants also sent the show's producers ideas for new segments, including those featuring information about ingredients and foods that Defendants sold.

17.     Through Duncan's appearances on "The Dr. Oz Show" and their experience selling dietary supplements and food products, Defendants were aware of the "Oz effect," a phenomenon where discussion of a product or product ingredient on "The Dr. Oz Show" causes a large increase in demand for the product or products containing the ingredient.

18.     To take advantage of the "Oz effect" and similar demand boosts from discussions of products and ingredients on other programs, Defendants in multiple instances took steps after Duncan's booking as a guest to ensure that they offered the featured product for sale by the time the episodes aired.  Defendants also made efforts to direct viewers researching the product online to websites where Defendants offered the products for sale.  For example, after learning on or about February 4, 2012 that he would be appearing on "The Dr. Oz Show" to discuss black raspberry as a "top cancer-fighting supplement," Duncan and other employees of Defendants created Pure Health as a new "division" of Genesis Today to market black raspberry, which Defendants had not sold in any form until that time.  Defendants registered the domain name "pureblackraspberry.com" on or about February 6, 2012, and placed a purchase order for raw black raspberry extract for encapsulation on or about February 7, 2012.

19.     Duncan taped the "Dr. Oz Show" episode about black raspberry on February 8, 2012.  During the taping, Duncan advised consumers that they could find 300 mg black raspberry capsules online by typing the words "black raspberry" into their web browsers. Before the episode first aired on February 16, 2012, Defendants purchased product-specific Google AdWords – including "black raspberry," "dr. oz raspberry," "raspberry capsule," "black raspberries cancer," and "cancer cures" – that would trigger the appearance on consumers' computer screens of Defendants' advertisements for 300 mg black raspberry capsules. Defendants began offering a Pure Health brand black raspberry dietary supplement on February 15, one day before the episode first aired.  Defendants had selected the brand name "Pure Health" for many of their products, including GCBE capsules, at least in part because the name would allow them to benefit commercially from consumers using the word "pure" as an online search term after Duncan stressed in his television appearances that a supplement must be "pure."

Duncan's Appearance on "The Dr. Oz. Show"
Regarding Green Coffee Bean Extract

20.     A producer with "The Dr. Oz Show" first contacted Duncan about appearing as a guest to discuss GCBE in the morning of April 5, 2012.  A Dr. Oz Show producer wrote:  "We are working on a segment about the weight loss benefits of green coffee bean and I was hoping that Lindsey Duncan might be available to be our expert.  Has he studied green coffee bean at all?  Would he be able to talk about how it works?"  At that time, Duncan had no familiarity with the purported weight-loss benefits of GCBE, nor did Defendants sell GCBE.  Nevertheless, within a few hours, a senior member of the Defendants' public relations team replied: "Awesome!  Thanks for reaching out,  Dr. Lindsey does have knowledge of the Green Coffee Bean.  He loves it!"  Later that day, Defendants contacted a manufacturer of GCBE and, on or about the same day, submitted a wholesale order for GCBE raw material.

21.     In the evening of April 5, 2012, a producer for "The Dr. Oz Show" emailed Defendants a "very rough outline of the script" for the segment on GCBE shortly after a call between the producer and Duncan.  The email stated that the script contained "some sample

7

questions and [the producer's] sample answers" based on the producer and Duncan's phone conversation.  The draft also contained an introductory segment for Dr. Oz stating that "You may think magic is make believe – but this bean (hold coffee bean) has scientists saying . . . they found the magic weight loss cure for <u>every</u> body type.  As a supplement, this miracle pill can burn fat fast!  It's green coffee beans.  For those with fat all over and anyone who wants to lose weight – this is very exciting – breaking news!"  Defendants edited the script by, among other things, adding language in which Duncan would advise viewers that they could find green coffee bean capsules online by typing the words "Pure Green Coffee Bean Capsules" into their web browsers.  The Defendants also added language in which Duncan would advise viewers to "take two 400 mg vegetarian capsules."  Duncan rehearsed his delivery of the script during the days prior to taping the GCBE segment.

22.     Duncan taped the GCBE segment for "The Dr. Oz Show" on April 10, 2012, with Dr. Oz introducing Duncan as a naturopathic doctor and certified nutritionist.  During the taping, Duncan made claims that GCBE could cause substantial weight loss without consumers having to diet or exercise:

<u>"The Dr. Oz Show" (Exhibits 1 and 2) (taped April 10, 2012, first aired April 26, 2012)</u>

> Duncan:  You know, I usually don't recommend weight-loss supplements, but this one has got me really, really excited.  So, and the medical community, the weight-loss community is all buzzing about this, and here's why.  The recent study that you were talking about earlier, they – the participants took the capsules and did nothing else, they didn't exercise, they didn't change their diet.  They actually consumed 2,400 calories a day.  They burned only 400 calories.  Now, that's weight gain, not weight loss.
>
> Dr. Oz:  Yeah.
>
> Duncan:  And they lost over 10 percent of their total body weight.
>
> Dr. Oz:  Ten percent?
>
> Duncan:  Ten percent.  They lost 16 percent of their total body fat, and they lost about 17 pounds per participant, and they had no side effects, zero side effects.
>
> Dr. Oz:  And how long did they have to take the pills for?

Duncan:  They did it for 12 weeks only.

- Dr. Oz:  So, how does it work?

  Duncan:  Well, it's amazing.  It's what we call the triple threat.  Okay, and it's the chlorogenic acid that causes the effect, and it works three ways.  The first way is it goes in and it causes the body to burn glucose or sugar and burn fat, mainly in the liver.  The second way, and the most important way, is it slows the release of sugar into the bloodstream, so when you don't have sugar building up in the bloodstream you don't have fat building up because sugar turns to fat.  And everybody must remember that.

  Dr. Oz:  Right.

  Duncan:  When the two are combined together, you get this synergistic effect that basically burns and blocks and stops fat, but it also is natural and safe.

23.     Duncan stated during the taping that viewers should look for capsules in 800 mg servings, which was a dosage size correlating with two of the 400 mg capsules the Defendants had, prior to the taping, begun preparing to produce and sell.  Duncan also stated during the taping that consumers could find GCBE online by going to their web browsers and typing in "pure green coffee beans" or "pure green coffee bean extract."  Duncan stated as well that it was important for consumers to make sure that their GCBE be "pure."

24.     The staff of "The Dr. Oz Show" informed Defendants on April 11, 2012 that the GCBE episode would air on April 26, 2012.  On April 11, 2012, a Dr. Oz Show producer also asked Duncan if there was a GCBE brand or site that Duncan recommended.  Duncan delayed answering the question until the following day.  During that intervening day, he emailed Defendants' employees:  "This is either a set up or manna from the heavens . . .  Please get Green Coffee Bean up on our site immediately!!!  I will then recco the PH site!!!!!  Let me know when it's up!"  Defendants began offering Pure Health brand GCBE capsules for sale online on April 11, 2012.  The next day, Duncan replied to the Dr. Oz Show producer that he "did some research" and found that "[w]hen you type 'green coffee beans' into your web browser . . . . [t]he one Company that pops up selling a pill or supplement is www.purehealth100.com.  They are in the pure coffee category because they are 100% pure.

This looks like the best and most authentic product that I could find.  The price is fair and they had zero additives."  Duncan did not disclose to the Dr. Oz Show producer his relationship to Pure Health.  Over the ensuing months, Defendants continued to attempt to hide Duncan's relationship to Pure Health from the Dr. Oz Show and the public.

25.     Between April 7, 2012 and April 26, 2012, Defendants took numerous steps designed to direct viewers of the GCBE episode searching for the product to Defendants' websites.  For example, Defendants purchased numerous Google AdWords that would trigger the appearance on consumers' computer screens of Defendants' advertisements for GCBE when consumers used those particular words in Google searches.  These AdWords included, but were not limited to, the following:  "pure green coffee bean"; "pure green coffee bean extract"; "chlorogenic acid"; "coffee for weight loss"; "dr oz diet"; "dr oz green coffee bean"; "dr oz green coffee bean extract"; "green coffee bean capsule"; "green coffee bean extract"; "green coffee bean weight loss"; "slimming green coffee"; and "what is green coffee."

26.     Prior to the airing of the GCBE episode, Defendants also devised and executed a strategy to drive consumers to the Pure Health website, www.purehealth100.com, and to increase the prominence of this site in search engine result rankings, by setting up multiple "microsites," including www.Puregreencoffeebean.com, www.PureGreenCoffeeReviews.com, www.GreenCoffee100.com, and www.Thetruthaboutgreencoffee.com.  These sites, which Defendants described in internal emails as "fake websites," contained GCBE-related keywords and metatags, linked back to www.purehealth100.com, and were intended to boost that website's organic ranking in search engine result rankings.

27.     Prior to the airing of the GCBE episode on "The Dr. Oz Show," Duncan's Facebook page was repeatedly updated to advise consumers that he would be discussing a weight-loss product on the show.  For example, on April 10, 2012, an update was posted stating that he had just finished taping "another segment for The Dr. Oz Show.  Standby for some very, very revolutionary news on weight loss!"  On April 20, 2012, an update was posted stating: "We have the airdate for 'The Dr. Oz Show'!  I will be on Thursday, April 26 talking about a

superfood for weight loss with research that will absolutely blow your mind!  Check the Dr. Oz website for local listings.  http://www.doctoroz.com/."

28.     Defendants additionally used Duncan's impending appearance to sell GCBE to retailers such as Walmart.  For example, Lindsey Duncan wrote to a contact at Walmart on or about April 7, 2012 with "extremely confidential" information, stating:

> I am flying to NYC on Monday to appear on The Dr. Oz Show again where I will be presenting to Dr. Oz and the U.S. public the recent clinical trials that demonstrate that Green Coffee Bean (must be green and cannot be roasted) can produce significant weight loss in all subjects with zero exercise and zero changes in one's diet.  The title of the show is the "New Fat Burning Miracle."
>
> . . . This product is ready, and I wanted to present it, share it and offer it to our most valuable partner, you.

Similarly, an employee of Defendants emailed a Walmart employee on April 10, 2012, stating that "We just left a taping at the Dr. Oz show today, and Dr. Lindsey unveiled a new supplement that millions of Americans are going to want when this show airs in 2 weeks, and we have a product developed and ready to produce for Dept. 82 at Walmart.  You are probably aware of the 'Oz Effect,' this will be the Oz Effect on steroids!"

29.     Defendants also purchased a large supply of GCBE raw material before the episode aired to profit from the anticipated increased demand for the product following the show.  A Genesis Today employee informed a Walmart employee on April 13, 2012 that "we have bought up every available Green Coffee extract in the country and we are also working to buy up everything coming into the country.  This is what we do, we are experts at not only creating the buzz, sparking the trend, but also developing the product in rapid speed."

30.     Defendants began online sales of Pure Health GCBE capsules through the website www.purehealth100.com on April 11, 2012.  Defendants began shipping GCBE to Walmart in the days before April 26, 2012 and, on or about April 26, 2012, made Pure Health brand GCBE supplements available for sale on www.Amazon.com.

11

31.     The GCBE episode on "The Dr. Oz Show" first aired on April 26, 2012, and produced the desired "Oz effect."  Defendants experienced a high volume of calls and orders following the broadcast.  On April 26, 2012, a senior member of Genesis Today's public relations team emailed a Walmart employee stating:  "We are getting inundated with phone calls and we are selling online at over 40 orders per minute!  That doesn't even include phone orders."  Cheryl Wheeler Duncan stated in an April 27, 2012 email that "We are getting 'slammed' right now with Dr. Oz orders for green coffee bean . . . You can't imagine!  It's all good though."  Genesis Today's network administrator informed Duncan on April 30, 2012 that, based on Google Analytics, visits for the week to:  (a) the Genesis Today website were up 278.24% over the previous month; (b) www.drlindsey.com were up 2096.25% over the previous month; and (c) the Pure Health website were up 1506.04% over the previous month.  The Defendants' records tracking their spokespersons' media appearances list the "Retailers Mentioned" during Duncan's Dr. Oz Show appearance as "Pure Health," and the "Products Mentioned" as "GCB."

32.     Defendants continued to monitor and attempted to maximize the number of website visits produced by the Google AdWords they had purchased.  Defendants also took steps, including issuing "press releases," and posting those and other content to their "fake" websites, to ensure that these websites and the Pure Health website, to which the "fake websites" linked, would be featured prominently in search engine result rankings.  As part of this effort, Genesis Today's Senior Director of Public Relations on April 30, 2012 sent a company web designer an email about the microsites, asking him to "[p]lease make sure that the images you are using are all named for [search engine optimization], the metadata is filled out properly with our keywords (pure green coffee bean extract, pure green coffee bean), etc. etc. etc.  The point of these fake websites is to make sure Pure Health rank organically on page 1 . . . ."

33.     Defendants also incorporated the "Dr. Oz Show" episode on GCBE into their marketing campaign by linking to a video of Duncan's segment on their websites.  For example, on or about April 26, 2012, Defendants posted a "press release" on their "fake websites" that

12

linked to a video of the segment and advised consumers that "As seen on TV, Pure Health's 400 mg Green Coffee Bean extract Capsules are now available online at www.PureHealth100.com." A link to a video of the segment was posted on Duncan's Facebook page on April 27, 2012, stating "Good morning Facebook!  In case you want to see the segment again, it was just posted on Dr. Oz' website: http://www.doctoroz.com/videos/miracle-pill-burn-fat-pt-1."  Defendants also sent a clip of the preview show to Walmart and GNC and a clip of the actual segment to Sam's Club when attempting to get those retailers to purchase the product.

34.     After the initial airing, Defendants continued to use the GCBE episode in their marketing campaign.  For example, on or about July 31, 2012, after the episode had re-aired, a link to a video of the episode segment was again posted on Duncan's Facebook page, stating: "Just in case you missed the episode on 'The Dr. Oz Show' yesterday, I'm posting it below.  We continue to hear incredible success stories with Green Coffee Bean.  Keep it up!" Defendants also sought information from "The Dr. Oz Show" producers as to when the episode would re-air and increased their search engine optimization effort at the time of the re-broadcasts to boost their websites' rankings in online search results.

35.     Defendants also advertised and made weight-loss claims about GCBE on numerous websites, including www.purehealth100.com, www.drlindsey.com, www.genesistoday.com, and the "microsites" listed in Paragraph 26.

36.     Defendants have sold a variety of GCBE products, primarily bottles of capsules, directly to consumers and to retailers such as Walmart and Sam's Club.  The retail promotional materials included point-of-sale displays that noted that the Defendants' Pure Health brand GCBE capsules were a "New Health Discovery!  As Seen On TV. 'The Dieter's Secret Weapon.'"  In order to take maximum advantage of the "Oz effect" Defendants engaged in a campaign to contact 2,800 Walmart stores before and immediately after the GCBE episode aired on April 26, 2012 to ensure that their GCBE products were displayed in prominent fashion.  Defendants' efforts to capitalize on the "Oz effect" also included "As Seen on National TV!" point-of-sale displays for retail stores throughout the country in the months following the initial airing of that GCBE episode.  Some displays included references to weight loss and fat

loss, including references to a "Published Clinical Study" in which subjects lost an average of 17 pounds and 16% total body fat; some used Duncan's name and likeness; and some stated that the "Pure" GCBE was "800 mg per Serving & No Fillers."

37.      The prices of the bottles have ranged from $12.99 for a thirty-capsule bottle to $26.99 for a ninety-capsule bottle.  From April 2012 through the present, Defendants have sold over $50 million of GCBE products.

<u>Defendants' Advertising, Marketing, and Promotional Claims Following Duncan's<br>Appearance on "The Dr. Oz Show"</u>

38.      Following Duncan's appearance on "The Dr. Oz Show," Defendants' advertising, marketing, and other promotional messages continued to convey the core message that GCBE would cause consumers to lose substantial weight or cause rapid and substantial weight loss, including 17 pounds in 12 weeks and 16 percent of body fat in 12 weeks, without the consumers having to diet or exercise.  As detailed in Paragraphs 39 and 40, Defendants often communicated this message by touting the purported results of a study on GCBE authored by Joe Vinson, Bryan Burnham, and Mysor Nagendran.  This study, however, was structurally flawed and the results of the study are facially unreliable.  For example, the study reported that more than half of the weight loss (10.5 of the 17 pounds) occurred while participants were taking neither the GCBE nor the placebo.  The study does not prove that GCBE causes substantial weight loss; nor does it substantiate Defendants' weight-loss claims.

39.      To induce consumers to purchase GCBE, Defendants have disseminated, or caused to be disseminated, advertisements, marketing materials, and other promotional messages, including but not necessarily limited to those redistributing, incorporating, or referring to the statements in "The Dr. Oz Show" segment attached as Exhibit 1 (video) and Exhibit 2 (transcript), the statements in the video from www.drlindsey.com reproduced as Exhibit 3, and the web pages and "press release" attached as Exhibits 4-7.

40.      Defendants' GCBE advertising, marketing materials, and other promotional messages include the following representations:

14

www.drlindsey.com – Video (Exhibit 3, dated April 19, 2012, 8:38 in length)

- "This is what the study showed:  it showed that participants who took green coffee bean extract lost a total of 17 pounds each.  They also lost 10.5 percent of their total body weight.  And, this is the one that shocked me, they lost a total of 17 percent of their body fat."

- Graphic:  "Are these results typical?"

  o "Dr. Lindsey, are these typical results?  Because people are losing 3 pounds in 4 days or 6 pounds in 5 days.  And the answer is yes.  It's amazing, but the answer is yes, these are typical results.  And it's because of the mechanism of action."

- Graphic:  "Where do I find it?"

  o "It's pretty easy.  If you just go to your web browser and type in 'pure green coffee bean,' or 'pure green coffee bean extract,' a lot of different companies and products will pop up.  You can also find it at a health food store."

  o "Please make sure that the product is pure.  Read the label. . . .  Make sure that it's 400 mg capsules.  You want to make sure that each capsule is 400 mg."

  o "So, go to Google and type in 'pure green coffee bean' and you'll find it."

www.drlindsey.com – Text (Exhibit 4, dated April 19, 2012)

- "Normally, I don't recommend 'weight loss' supplements, especially weight loss supplements that claim 'easy weight loss' or 'fast weight loss,' but the Green Coffee Bean has truly amazed me.  What has the media and the scientific community so excited about Green Coffee Bean Extract is that people don't have to do anything different when taking this food supplement, they don't need to exercise, they don't need to diet, they just appear to drop pounds!"

- "The most recent study on Green Coffee Bean published in the _Diabetes, Metabolic Syndrome and Obesity_ journal followed a group of 16 adults who supplemented with Green Coffee Extract for 12 weeks. Over the course of the study, the subjects lost an average of 17 pounds each – this was 10 percent of their overall body weight and 16 percent of their overall body fat! That is very compelling information, and one reason why I think that Green Coffee Bean could be an effective solution against the obesity epidemic that is plaguing our country."

- "Chlorogenic Acid works by inhibiting the release of glucose in the body while at the same time boosting the metabolism or the 'burning' of fat in the liver. These two mechanisms combined work together to inhibit the absorption of fat and eliminate weight gain."

- "A lot of people are asking me which product I recommend, and my fans know that I love Pure Health's products because they always offer the purest form of all the superfoods that they sell. Pure Health has a 400 mg vegetarian capsule that you can purchase online. Another product that I love and recommend is Genesis Today's 100% pure Green Coffee Bean capsules, which you can find in health food stores or **call 1-800-916-6642**."

- "Tested and Trusted Brands:
  - www.GenesisToday.com
  - www.PureHealth100.com
  - www.GenesisPure.com"

www.purehealth100.com (Exhibit 5, dated May 3, 2012)

- "Recent clinical studies and trials have shown that the specific combination of Chlorogenic Acid and caffeine are effective for weight loss. One particular study followed 16 people (with a body mass index between 25% and 30%) and between 22 to 46 years old."

  …

16

**"What effects did the Green Coffee Bean have?** <u>After the study, participants were found to have lost an average of seventeen pounds, which broke down to a 10.5 percent decrease in overall body weight and a 16 percent decrease in body fat."</u>

- **"How does Green Coffee Bean work for Weight Loss?**
  Green Coffee Beans have been shown to inhibit fat absorption and also stimulate the activation of fat metabolism in the liver, both major supporters of weight reduction."

<u>Microsites, including www.puregreencoffeebean.com (Exhibit 6, dated August 5, 2012)</u>

- **<u>"Lose Weight Without Diet or Exercise!</u>**
  Have you heard about the amazing new superfood discovery?  Green coffee beans—the raw, unroasted form of coffee beans—have been found to **block carb calories, increase fat burning** and **reduce appetite** naturally!  Are you ready to lose over a pound a week without diet or exercise?"

<u>Press Release, also included on microsites (Exhibit 7, dated May 3, 2012)</u>

- "As recently recommended by celebrity nutritionist and famous health expert Dr. Lindsey Duncan, who is the expert who unveiled the green coffee secret with Dr. Oz on the "The Dr. Oz Show," 400 mg Green Coffee Bean capsules are a super-effective, low-cost solution to support healthy weight loss and support high blood pressure when taken daily.  Dr. Lindsey recommended looking for "pure green coffee bean extract" with no additives or fillers.  Only Pure Health's product contains 100% pure Green Coffee Bean with absolutely no additives, and only Pure Health's Green Coffee Bean Extract Capsules have passed Walmart's extremely rigorous standards for health and wellness products at their stores."

- "Users of Pure Health's Green Coffee Bean Capsules have seen results!  In less than 2 weeks, real Pure Health Green Coffee Bean users like Tracy have lost weight fast!  Tracy lost 6.5 pounds in only 11 days - her video testimonial is available online here: http://www.youtube.com/watch?v=eEqSwnactTQ.  Shelley, another real Pure Health

Green Coffee Bean user lost 5 pounds in only 10 days - her testimonial is available here http://www.youtube.com/watch?v=KVPkvOObOFo."

- "In a recent study on Green Coffee Bean extract presented at the American Chemical Society conference in San Diego and reported on in national media outlets like "The Dr. Oz Show" and CBS News, test subjects who supplemented with Green Coffee Bean Extract lost an average of 17 pounds in only 12 weeks of supplementation without any changes to diet or exercise with zero side effects. In fact, the subjects ate an average of 2,400 calories per day and only burned 400 calories per day, yet they lost more than 16 percent of their total body fat!"

<u>Non-Disclosure of Material Connection</u>

41.    At times relevant to this Complaint, Duncan had a significant financial interest in the sale of Genesis Today's and Pure Health's products. Duncan controlled both companies and Duncan's ex-wife, Cheryl Wheeler Duncan, owned 94% of Pure Health from the time it was formed in or about February 2012 until Genesis Today purchased it in or about November 2012.

42.    Duncan's authority and control over Pure Health extended to Pure Health's marketing and sales of GCBE. For example, Duncan determined what products Pure Health would sell, controlled how much Pure Health spent on online advertising, revised and approved Pure Health press releases, and had final say over Pure Health website design changes. He also controlled the salary and bonus amounts of the president of Pure Health, who was responsible for Pure Health's day-to-day operations and who was, at times relevant to this Complaint, an officer, board member, and employee of Genesis Today.

43.    In numerous instances in their marketing campaign, Defendants failed to disclose to consumers that Duncan had a financial interest in the sale of GCBE and Defendants' other products. For example, Duncan did not disclose on "The Dr. Oz Show" that he had a financial interest in the sale of black raspberry or GCBE, or that he had any connection to either Pure Health or Genesis Today. Duncan also failed to disclose, or adequately disclose, his financial interest in Pure Health's and Genesis Today's products on the website, www.drlindsey.com, where he recommended a number of the companies' products. For example, Duncan stated on a

page on www.drlindsey.com:  "**Where should I buy Green Coffee Bean Capsules?**  A lot of people are asking me which product I recommend, and my fans know that I love Pure Health's products because they always offer the purest form of all the superfoods that they sell.  Pure Health has a 400 mg vegetarian capsule that you can purchase online.  Another product that I love and recommend is Genesis Today's 100% pure Green Coffee Bean capsules, which you can find in health food stores or call **1-800-916-6642**."  In appearances on "The View," as well as other television programs, Duncan discussed the purported benefits of Genesis Today and Pure Health brand products and often suggested that consumers could purchase the products at certain retailers or through www.purehealth100.com, but did not disclose to viewers that he controlled and had a financial interest in both companies.

44.     In addition to Duncan, Defendants paid various spokespersons and "brand ambassadors" to mention Defendants' products on television and radio programs and in blog posts.  Defendants helped these spokespersons prepare for appearances and drafted talking points for the spokespersons to use in discussing the benefits of Defendants' products.  During their appearances, the spokespersons mentioned, and often displayed, Defendants' products and noted the retailers at which consumers could purchase the products.  In numerous instances, the spokespersons presented themselves on the programs as independent parties and failed to disclose their financial connections to Defendants.

45.     Beginning in approximately April 2012, Defendants also failed to disclose or to disclose adequately that (a) certain online reviews of Defendants' GCBE products, including on Amazon.com, ostensibly submitted by ordinary consumers, were paid for by Defendants; and (b) certain video testimonials to which Defendants' promotional materials linked, in which purported users of Defendants' GCBE products described their weight loss results, were provided by Defendants' employees.

## VIOLATIONS OF THE FTC ACT

46.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts of practices in or affecting commerce."

47.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

48.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics.  For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, GCBE is either a "food" or "drug" as defined in Sections 15(b) and (c) of the FTC Act, 15 U.S.C. §§ 55(b), (c).

## COUNT I

### CLAIM REGARDING SUBSTANTIAL WEIGHT LOSS
### WITHOUT DIET OR EXERCISE

49.     Through the means described in Paragraphs 11-40, Defendants have represented, expressly or by implication, that GCBE causes substantial weight loss and fat loss, or rapid and substantial weight loss and fat loss, including 17 pounds in 12 weeks and 16 percent of body fat in 12 weeks, without diet or exercise.

50.     The representation set forth in Paragraph 49 is false and/or was not substantiated at the time the representation was made.

51.     Therefore, the making of the representation set forth in Paragraph 49 constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT II

### FALSE ESTABLISHMENT CLAIM

52.     Through the means described in Paragraphs 11-40, Defendants have represented, expressly or by implication, that a clinical study shows that GCBE causes substantial weight loss and fat loss, or rapid and substantial weight loss and fat loss, including 17 pounds in 12 weeks and 16 percent of body fat in 12 weeks, without diet or exercise.

53.     In truth and in fact, a clinical study does not show that GCBE causes substantial weight loss and fat loss, or rapid and substantial weight loss and fat loss, including 17 pounds in 12 weeks and 16 percent of body fat in 12 weeks, without diet or exercise.

54. Therefore, the representation set forth in Paragraph 52 is false or misleading, and constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT III

## NONDISCLOSURE OF MATERIAL CONNECTION

55. Through the means described in Paragraphs 11-45, Defendants have represented, expressly or by implication, that the endorsements of the benefits of GCBE and/or Defendants' branded products by Duncan or other individuals reflected the objective opinions of independent individuals.

56. In numerous instances in connection with these endorsements, Defendants failed to disclose, or disclose adequately, that:

> (a) Duncan had a financial interest in the sale of Defendants' products, including GCBE;

> (b) the other individuals were paid spokespersons for Defendants who received financial compensation for their promotion of Defendants' products;

> (c) certain online reviews of Defendants' products were paid for by Defendants; and/or

> (d) certain video testimonials were provided by Defendants' employees.

This additional information would be material to consumers in deciding to purchase Defendants' products, including GCBE.

57. Defendants' failure to disclose the material information described in Paragraph 56, in light of the representations described in Paragraph 55, constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## CONSUMER INJURY

58. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched

21

as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

59.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

60.     WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

B.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

C.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

Dated:  January 26, 2015

/s/

EDWARD GLENNON
CARL H. SETTLEMYER, III
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mail Drop CC-10528
Washington, DC 20580

22

(202) 326-3126, -2019 (Tel.)
(202) 326-3259 (Fax)
eglennon@ftc.gov
csettlemyer@ftc.gov


Attorneys for Plaintiff Federal Trade Commission